1

2

3

4                        UNITED STATES DISTRICT COURT

5                       NORTHERN DISTRICT OF CALIFORNIA

6

7   CLYDE RAYMOND WALLIN,[1]            Case No. 22-cv-02681-TSH

8                Plaintiff,

9         v.                            ORDER RE: CROSS-MOTIONS FOR
                                        SUMMARY JUDGMENT
10  KILOLO KIJAKAZI,
                                        Re: Dkt. Nos. 15, 21
11               Defendant.

12

13                             I.    INTRODUCTION

14          Plaintiff Clyde Wallin moves for summary judgment to reverse the decision of Defendant

15  Kilolo Kijakazi, Acting Commissioner of Social Security, denying his former spouse's claim for

16  disability benefits under the Social Security Act, 42 U.S.C. § 401 et seq.  ECF No. 15.  Defendant

17  cross-moves to affirm.  ECF No. 22.  Pursuant to Civil Local Rule 16-5, the matter is submitted

18  without oral argument.  Having reviewed the parties' positions, the Administrative Record

19  ("AR"), and relevant legal authority, the Court hereby **DENIES** Plaintiff's motion and **GRANTS**

20  Defendant's cross-motion for the following reasons.[2]

21                          II.    PROCEDURAL HISTORY

22          On August 10, 2018, Plaintiff filed an application for Social Security benefits with a

23  disability onset date of July 1, 2018.  AR 167-68.  The application was initially denied on

24

25  ---
    [1] This case was filed on March 17, 2021 by Marcia Hirtenstein.  After she passed away on
26  December 22, 2021, Clyde Raymond Wallin moved to substitute in as plaintiff as the surviving
    divorced spouse.  *See* ECF No. 14, Ex. A.  Pursuant to Federal Rule of Civil Procedure 25, the
27  Court **GRANTS** Wallin's motion.  *See* 42 U.S.C. § 216 (d)(5), 20 C.F.R. § 404.503(b)(1).  As
    used in this order, "Plaintiff" refers to both Wallin and Hirtenstein.
28  [2] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF
    Nos. 31, 34.

United States District Court
Northern District of California

1    September 14 and again on reconsideration on December 19, 2018.  AR 87-90, 100-05.  An

2    Administrative Law Judge ("ALJ") held a hearing on May 5, 2020 and issued an unfavorable

3    decision on June 3, 2020.  AR 9-60.  The Appeals Council denied Plaintiff's request for review on

4    January 13, 2021.  AR 1-6.  Plaintiff now seeks review pursuant to 42 U.S.C. § 405(g).

### III.   ISSUES FOR REVIEW

6        Plaintiff raises two arguments on appeal: (1) the ALJ improperly rejected Plaintiff's

7    testimony; and (2) the ALJ gave undue deference to the opinions of the examining State agency

8    evaluators.

### IV.   STANDARD OF REVIEW

10        42 U.S.C. § 405(g) provides this Court's authority to review the Commissioner's decision

11   to deny disability benefits, but "a federal court's review of Social Security determinations is quite

12   limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).  "An ALJ's disability

13   determination should be upheld unless it contains legal error or is not supported by substantial

14   evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citations omitted).

15   Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to

16   support a conclusion." *Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019)

17   (simplified).  It means "more than a mere scintilla, but less than a preponderance" of the evidence.

18   *Garrison*, 759 F.3d at 1009 (citation omitted).

19        The Court "must consider the entire record as a whole, weighing both the evidence that

20   supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm

21   simply by isolating a specific quantum of supporting evidence." *Id.* (citation omitted).  "The ALJ

22   is responsible for determining credibility, resolving conflicts in medical testimony, and for

23   resolving ambiguities." *Id.* at 1010 (citation omitted).  If "the evidence can reasonably support

24   either affirming or reversing a decision," the Court may not substitute its own judgment for that of

25   the ALJ." *Id.* (citation omitted).

26        Even if the ALJ commits legal error, the ALJ's decision will be upheld if the error is

27   harmless.  *Molina v. Astrue*, 674 F.3d 1104, 1111, 1115 (9th Cir. 2012).  "[A]n error is harmless

28   so long as there remains substantial evidence supporting the ALJ's decision and the error does not

negate the validity of the ALJ's ultimate conclusion." *Id.* at 1115 (simplified). But "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Brown-Hunter*, 806 F.3d at 492. The Court is "constrained to review the reasons the ALJ asserts." *Id.* (simplified).

## V.  DISCUSSION

### A.  Framework for Determining Whether a Claimant Is Disabled

A claimant is considered "disabled" under the Social Security Act if two requirements are met. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that the claimant is unable to perform previous work and cannot, based on age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

The regulations promulgated by the Commissioner of Social Security provide for a five-step sequential analysis to determine whether a Social Security claimant is disabled. 20 C.F.R. § 404.1520. The claimant bears the burden of proof at steps one through four. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citation omitted).

At step one, the ALJ must determine if the claimant is presently engaged in a "substantial gainful activity," 20 C.F.R. § 404.1520(a)(4)(i), defined as "work done for pay or profit that involves significant mental or physical activities." *Ford*, 950 F.3d at 1148 (internal quotations and citation omitted). Here, the ALJ determined Plaintiff had not performed substantial gainful activity since July 1, 2018, the alleged onset date. AR 14.

At step two, the ALJ decides whether the claimant's impairment or combination of impairments is "severe," 20 C.F.R. § 404.1520(a)(4)(ii), "meaning that it significantly limits the claimant's 'physical or mental ability to do basic work activities.'" *Ford*, 950 F.3d at 1148 (quoting 20 C.F.R. § 404.1522(a)). If no severe impairment is found, the claimant is not disabled.

United States District Court
Northern District of California

3

1    20 C.F.R. § 404.1520(c).  Here, the ALJ determined Plaintiff had the following severe

2    impairments: "insulin-dependent, type I diabetes mellitus; diabetic polyneuropathy; status post

3    myocardial infarction and three vessel coronary artery bypass graft in January 2012; and obesity."

4    AR 14.

5        At step three, the ALJ evaluates whether the claimant has an impairment or combination of

6    impairments that meets or equals an impairment in the "Listing of Impairments" (referred to as the

7    "listings").  *See* 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1.  The listings

8    describe impairments that are considered "to be severe enough to prevent an individual from doing

9    any gainful activity."  *Id.* § 404.1525(a).  Each impairment is described in terms of "the objective

10   medical and other findings needed to satisfy the criteria of that listing."  *Id.* § 404.1525(c)(3).

11   "For a claimant to show that his impairment matches a listing, it must meet all of the specified

12   medical criteria.  An impairment that manifests only some of those criteria, no matter how

13   severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (footnote omitted).  If a

14   claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent

15   to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering

16   age, education and work experience.  20 C.F.R. § 404.1520(d).  Here, the ALJ determined Plaintiff

17   did not have an impairment or combination of impairments that meets the listings.  AR 15.

18       If the claimant does not meet or equal a listing, the ALJ proceeds to step four and assesses

19   the claimant's residual functional capacity ("RFC"), defined as the most the claimant can still do

20   despite their imitations (20 C.F.R. § 404.1545(a)(1)), and determines whether they are able to

21   perform past relevant work, defined as "work that [the claimant has] done within the past 15 years,

22   that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do

23   it."  20 C.F.R. § 404.1560(b)(1).  If the ALJ determines, based on the RFC, that the claimant can

24   perform past relevant work, the claimant is not disabled.  *Id.* § 404.1520(f).  Here, the ALJ

25   determined Plaintiff had the RFC to

26        to perform a range of light work as defined in 20 CFR 404.1567(b)
          except she can lift 20 pounds occasionally, lift and carry 10 pounds
27        frequently, stand and walk 6 out of 8 hours, and sit 6 out of 8 hours;
          she can perform climbing of ramps and stairs frequently but no
28        ladders, ropes, and scaffolds and no work involving hazards such as

United States District Court
Northern District of California

4

unprotected heights and dangerous moving machinery; and
stooping, kneeling, crouching, and crawling can be performed
frequently.

AR 16.  Based on this RFC, the ALJ determined Plaintiff could perform past relevant work as a

chief financial officer and was therefore not disabled.  AR 19-20.  As such, the ALJ did not

proceed to step five of the analysis.[3]

## B.     Plaintiff's Subjective Symptom Allegations

Plaintiff argues the ALJ erred in the assessment of her subjective symptoms.  Pl.'s Mot. at

7-12.  Plaintiff alleged disability due to several impairments including diabetes, pertussis

(respiratory infection) and heart problems.  AR 192.  She testified that she stopped working

because her employer eliminated her position/reassigned it to someone else and offered her early

retirement.  AR 41-42.  Plaintiff testified she was subsequently diagnosed with pertussis and it

took her a long time to recover.  AR 44-45.  She testified that her cough finally went away in May

or June of 2019.  AR 45.  Plaintiff also testified that her blood sugars were not in the proper range.

AR 42-43.  She also had a history of bypass surgery.  AR 40.

The ALJ considered Plaintiff's testimony and found her allegations of disabling limitations

were not supported by the medical evidence and other evidence in the record.  AR 16-19.  Plaintiff

argues the ALJ failed to specify which testimony she found not credible and failed to provide clear

and convincing reasons supported by evidence in her decision.  Pl.'s Mot. at 10.

### 1.     Legal Standard

"In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ

must engage in a two-step analysis.  'First, the ALJ must determine whether the claimant has

presented objective medical evidence of an underlying impairment which could reasonably be

expected to produce the pain or other symptoms alleged.'"  *Vasquez v. Astrue*, 572 F.3d 586, 591

(9th Cir. 2009) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).  And

second, "if the claimant meets the first test and there is no evidence of malingering, the ALJ can

---

[3] At step five, the burden would shift to the agency to prove that "'the claimant can perform a
significant number of other jobs in the national economy.'"  *Ford*, 950 F.3d at 1149 (quoting
*Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)).

United States District Court
Northern District of California

1    only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear

2    and convincing reasons' for the rejection." *Vasquez*, 572 F.3d at 591 (quoting *Smolen v. Chater*,

3    80 F.3d 1273, 1282 (9th Cir. 1996)).  "At the same time, the ALJ is not required to believe every

4    allegation of [symptoms], or else disability benefits would be available for the asking, a result

5    plainly contrary to 42 U.S.C. § 423(d)(5)(A)."  *Molina*, 674 F.3d at 1112 (citation and internal

6    quotations omitted).  Along the same lines, "an individual's statements of symptoms alone are not

7    enough to establish the existence of a physical or mental impairment or disability."  SSR 16-3P,

8    2016 WL 1119029, at *2.

9        In determining whether an individual's symptoms will reduce her capacities to perform

10   work-related activities or abilities to function, "the ALJ may consider inconsistencies either in the

11   claimant's testimony or between the testimony and the claimant's conduct; unexplained or

12   inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and

13   whether the claimant engages in daily activities inconsistent with the alleged symptoms."  *Molina*,

14   674 F.3d at 1112 (citations and internal quotation marks omitted).  "[I]f an individual's statements

15   about the intensity, persistence, and limiting effects of symptoms are inconsistent with the

16   objective medical evidence and the other evidence, [the ALJ] will determine that the individual's

17   symptoms are less likely to reduce his or her capacities to perform work-related activities or

18   abilities to function independently, appropriately, and effectively in an age-appropriate manner."

19   SSR 16-3p, 2016 WL 1119029, at *7.

20       2.      **Analysis**

21       The ALJ noted Plaintiff reported taking medications for heart conditions, blood pressure,

22   cholesterol, thyroid, and diabetes.  AR 16.  The ALJ also summarized Plaintiff's statements about

23   her symptoms, including that she lived with her daughter, who helped with shopping, lifting,

24   carrying, and light cleaning; she had an active driver's license and did not have any medical issues

25   driving, aside from low blood sugar; and she went to the grocery store, pharmacy, and medical

26   appointments.  *Id.*  Plaintiff also testified that she went to the beach for walks, was able to walk

27   on flat surfaces for a couple of miles, and that walking helped her diabetes.  *Id.*  She had pain in

28   her left foot due to bone spurs, was weak and tired during the day because she had to check her

United States District Court
Northern District of California

1  blood sugars, and she had to take naps.  AR 16-17.  She could do household activities in stages;

2  for example, she could do a chore for about 30 minutes at a time but then she must lie down.  AR

3  17.  After consideration of this evidence, the ALJ found Plaintiff's "medically determinable

4  impairments could reasonably be expected to cause the alleged symptoms; however, the

5  claimant's statements concerning the intensity, persistence and limiting effects of these symptoms

6  are not entirely consistent with the medical evidence and other evidence in the record for the

7  reasons explained in this decision."  *Id.*

8         The Court finds the ALJ provided clear and convincing reasons for discounting Plaintiff's

9  testimony.  The ALJ properly found that Plaintiff's allegations of disabling symptoms were not

10  supported by the medical evidence.  *See* 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence

11  of this type is a useful indicator to assist us in making reasonable conclusions about the intensity

12  and persistence of your symptoms and the effect those symptoms, such as pain, may have on your

13  ability to work.").  This could not be the ALJ's sole reason for rejecting Plaintiff's statements

14  about symptoms, but it was a factor that she was required to consider.  *See Rollins v. Massanari*,

15  261 F.3d 853, 857 (9th Cir. 2001) (while a claimant's subjective statements about symptomology

16  "cannot be rejected on the sole ground that it is not fully corroborated by objective medical

17  evidence, the medical evidence is still a relevant factor").

18         Although Plaintiff had a history of heart problems, a December 2017 stress test showed

19  normal results.  AR 337-38.  Plaintiff's treatment provider released her to regular exercise and

20  routine follow up with her primary care provider.  AR 337.  While Plaintiff was diagnosed with

21  pertussis, her symptoms improved with medication.  AR 310, 457.  As to diabetes, the evidence

22  showed elevated blood sugar levels, but her sugar levels also showed improvement.  AR 264, 312.

23  In May 2018, Plaintiff reported she was doing well and had no significant symptoms, with a

24  benign examination and her blood sugar control had returned to normal.  AR 264.  Physical exams

25  typically showed normal findings including normal pulmonary sounds and percussion, regular S1

26  and S2 without murmur, rubs or gallop, normal thyroid, grossly intact cranial nerves II through

27  XII, and steady gait.  *See, e.g.*, AR 250 (normal heart rate and rhythm, no wheezes or rales in the

28  chest); AR 276 (grossly intact cranial nerves, unlabored breathing, and no edema); AR 288 (no

1    murmur, gallop or arrhythmia); AR 351-52 (normal breath sounds, normal percussion and no

2    wheezes); AR 372 (normal chest wall, clear lungs, regular heart S1 and S2 without murmur, rubs

3    or gallop); AR 391 (clear lungs, grossly intact cranial nerves, and steady gait), AR 402 (clear

4    lungs, no murmurs, rubs or gallops in resting heart rate).  Based on this record, the Court finds the

5    ALJ reasonably found Plaintiff's allegations were not supported by the overall medical evidence.

6    *See Reyes v. Berryhill*, 716 Fed. App'x 714, 714 (9th Cir. 2018) (ALJ properly concluded

7    plaintiff's testimony was not corroborated by normal medical findings).

8         Plaintiff notes her testimony that her days were unpredictable because of blood sugar

9    fluctuations and that she sometimes could not drive or take a walk or complete any household

10   tasks without breaks to rest and wait for her blood sugar to stabilize.  Pl.'s Mot. at 10.  However,

11   no treating or examining source found that Plaintiff was disabled due to fatigue or any other

12   condition.  Instead, the ALJ sufficiently relied on the generally normal medical findings, which

13   did not indicate that Plaintiff's blood sugar levels created significant functional limitations.  *See*

14   AR 17-18 ("In terms of diabetes, while the evidence shows elevated blood sugars in connection

15   with the claimant's episode of pertussis and antibiotic medications in early 2018, the elevation

16   generally resolved when the pertussis resolved and when she stopped taking antibiotics . . . .

17   Moreover, in May 2018, the claimant reported she was doing well with no significant symptoms,

18   with a benign examination, and with blood sugar control returned to normal . . . .  Further,

19   physical examination findings over the longitudinal record show grossly normal findings.  For

20   example, examinations typically show normal pulmonary sounds and percussion, regular S1 and

21   S2 without murmur, rubs, or gallop, normal thyroid, grossly intact cranial nerves II through XII,

22   and steady gait . . . ."); *see also Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) ("Pain is

23   subjective in both existence and degree" and the ALJ properly discounted the claimant's pain

24   complaints due to contradictions between her testimony and the medical evidence).  The ALJ

25   properly considered Plaintiff's generally conservative course of treatment.  AR 17;  *Johnson*, 60

26   F.3d at 1434(conservative course of treatment suggested a lower level of functional limitation).

27   The record shows that Plaintiff received generally conservative treatment for her impairments such

28   as medication.  AR 251, 351.  Treatment notes show diet, exercise and weight management were

1    recommended for optimal blood lipid status.  AR 332; *Warre v. Comm'r of Soc. Sec. Admin.*, 439

2    F.3d 1001, 1006 (9th Cir. 2006) (an impairment that can be controlled effectively with treatment is

3    not disabling); *Celaya v. Halter*, 332 F.3d 1177, 1181 (9th Cir. 2003) (in discounting pain

4    complaints, ALJ "reasonably noted" evidence that pain had come under control); *Meanel v. Apfel*,

5    172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ appropriately discounted subjective complaints where

6    claimant's allegations of disabling symptoms were inconsistent with the "'minimal, conservative

7    treatment' that she received").

8         The ALJ also considered Plaintiff's daily activities.  AR 18.  Plaintiff testified she drove,

9    shopped for groceries and walked for up to two miles on flat terrain.  AR 36-39.  She also testified

10   that walking helped her diabetes.  AR 39.  Plaintiff reported that she walked four miles a day

11   during a trip to Italy.  AR 297, 505.  While, as Plaintiff points out, she is not required to "vegetate

12   in a dark room," Pl.'s Mot. at 11, that was not the standard applied by the ALJ.  Instead, the ALJ

13   found that Plaintiff's testimony was not credible because her activities supported a greater degree

14   of function than alleged.  *See Molina*, 674 F.3d at 1113 ("Even where those activities suggest

15   some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the

16   extent that they contradict claims of a totally debilitating impairment"); *Valentine v. Astrue*, 574

17   F.3d 685, 694 (9th Cir. 2009) (the ALJ properly determined that claimant's "non-work activities . .

18   . are inconsistent with the degree of impairment he alleges").

19        In sum, the ALJ provided valid reasons to discount Plaintiff's statements about her alleged

20   symptoms and limitations.  Although Plaintiff highlights select pieces of evidence to argue she

21   was more limited than the ALJ determined, it is not the Court's role to second guess the ALJ's

22   conclusions or substitute its judgment for the ALJ's.  *See Ford*, 950 F.3d at 1149 ("the ALJ 'is

23   responsible for determining credibility, resolving conflicts in medical testimony, and for resolving

24   ambiguities'") (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).  Because the

25   ALJ's findings were reasonable and well supported by substantial evidence in the record, the

26   Court must affirm, even if other interpretations of the evidence are possible.  *See Woods v.*

27   *Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022) ("Where evidence is susceptible to more than one

28   rational interpretation, it is the ALJ's conclusion that must be upheld.") (quoting *Burch v.*

1    *Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).

2    **C.     Medical Evidence**

3         Plaintiff next argues the ALJ gave undue deference to the opinions on non-examining State

4    agency doctors.  Pl.'s Mot. at 12-13.  In formulating Plaintiff's RFC for light work, the ALJ relied

5    in part on the opinions of the non-examining state agency doctors, J. Allen, M.D. and Julie Chu,

6    M.D.  AR 18.  Plaintiff argues these doctors did not properly consider her limitations related to her

7    "uncontrolled diabetes, an impairment the ALJ herself did find to be 'severe' as defined."  Pl.'s

8    Mot. at 12.  Plaintiff maintains that, "[w]hen properly considered, [her] testimony establishes that

9    her blood sugar fluctuations would cause unpredictable time off task during the work day which

10   the VE testified would preclude employment."  *Id.*

11        **1.     Legal Standard**

12        For Social Security claims filed after March 27, 2017, the ALJ is required to assess the

13   persuasiveness of the medical opinion using the regulations outlined in 20 C.F.R. §§ 404.1520c

14   and 416.920c.  *See Woods*, 32 F.4th at 791-93 (embracing the Commissioner's new regulatory

15   framework for evaluating medical opinions).  Under these new regulations, the ALJ is asked to

16   consider five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4)

17   specialization, and (5) other facts including but not limited to a medical source's familiarity with

18   the other evidence in the claim or an understanding of the disability program's policies and

19   evidentiary requirements.  *See* 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).  Of these

20   five, the ALJ must address supportability and consistency in each assessment and may, but is not

21   required to, explain how they considered the remaining three factors.  *See* 20 C.F.R. §§

22   404.1520c(a)(2), 416.920c(a)(2).

23        "Supportability means the extent to which a medical source supports the medical opinion

24   by explaining the 'relevant . . . objective medical evidence.'"  *Woods*, 32 F.4th at 791-92; *see also*

25   20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) ("The more relevant the objective medical evidence

26   and supporting explanations presented by a medical source are to support his or her medical

27   opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or

28   prior administrative medical finding(s) will be").  "Consistency means the extent to which a

United States District Court
Northern District of California

10

medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods*, 32 F.4th at 792; *see also* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be").

The new regulations eschew the former hierarchy of medical opinions and no longer require the ALJ to afford greater weight to the opinions of treating physicians. *See Woods*, 32 F.4th at 787; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources"). Instead, an ALJ is free to consider each medical opinion equally and may find an opinion more persuasive than others provided that substantial evidence supports such a finding. When rejecting a medical opinion as unsupported or inconsistent, the ALJ is required to provide an explanation supported by substantial evidence. *Woods*, 32 F.4th at 792. If the ALJ does so, then a court may not overturn the ALJ's decision "unless it is . . . based upon legal error." *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018).

### 2.     Analysis

The Court finds the ALJ properly evaluated the State agency findings. As a preliminary matter, the ALJ found Dr. Allen's and Dr. Chu's opinions only "partly persuasive" because they determined Plaintiff could perform a range of medium work. AR 18, 68-70, 81-83. While the ALJ noted their findings were supported by the generally normal medical evidence, *see* AR 18, 276, 288, 351-52, 372, 391, 402, as the factfinder, the ALJ found Plaintiff had additional impairments and limitations based on the entire record, and therefore limited Plaintiff's RFC to light work. AR 16. It is the Commissioner's responsibility, not a physician's, to assess a claimant's RFC. *See* 20 C.F.R. § 404.1546(c) (ALJ is responsible for determining RFC); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."). In making the RFC determination, the ALJ takes into account those limitations for which there is record support that

does not depend on properly rejected evidence and subjective complaints.  *See Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).

In support of her argument, Plaintiff relies on her testimony that she would be off task at unpredictable times due to her blood sugar levels, arguing that "like the ALJ, [Drs. Allen and Chu] failed to acknowledge, let alone consider the implications of [her] diabetes related fatigue."  Pl.'s Mot. at 12.  However, as discussed above, the ALJ considered Plaintiff's subjective testimony on this subject and properly rejected it.  The ALJ also considered Plaintiff's generally conservative course of treatment and noted "the record contains no greater restrictions or opinions from a treating or examining source."  AR 17, 18.  Accordingly, the Court finds substantial evidence supports the ALJ's RFC assessment, and the ALJ's decision must therefore be affirmed.

## VI.    CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's motion and **GRANTS** Defendant's cross-motion.  The Court shall enter a separate judgment, after which the Clerk of Court shall terminate the case.

**IT IS SO ORDERED.**

Dated: December 7, 2022

_____
THOMAS S. HIXSON
United States Magistrate Judge

United States District Court
Northern District of California

12